J<udsis Simpson
delivered the opinion of the Court.
In the year 1798, William Chamberlain and Lyne Shackelford executed to Edwin Upshaw an obligation by which they bound themselves to convey to him a tract of land containing one thousand acres, entered and surveyed in the name of Javin Miller, and to warrant the title to the same, to the said Upshaw, his heirs, &c.
In the year 1803, Chamberlayne conveyed said land to Upshaw by deed, containing a clause of general warranty. The land had been previously conveyed to Chamberlaine by one Armstrong, to whom it had been conveyed by Mary Parsons, who claimed to be the mother and heir at law of Javin Miller, deceased, in whose name the land had been entered and surveyed, and to whom a patent issued in the year 1824, after his death. Lyne Shackelford does not appear ever to have had any title to the land.
This suit in chancery was commenced by Upshaw in the year 1840. He states the foregoing facts in his bill, and alleges that about the year 1819, James Metcalfe, who had married one of the daughters of Lyne Shackelford, took possession of said tract of land, in conjunction with some of the other heirs of Shackelford, who had died, claiming the land as having belonged toShackelford, and asserting a right to it as his heirs. That Metcalfe afterwards, with full knowledge of complainant’s claim, caused two surveys of five hundred acres each, to be fraudulently made on Kentucky Land Office warrants, embracing the whole of the land; and, by further fraud, obtained patents therefor, in his own name, elder in date than the patent to Javin Miller, *203 That Metcalfe, after the patents were' issued, had conveyed portions of the land to the other heirs of Shackelford, by which the fraudulent combination among them to cheat him of out the land, was fully demonstrated. He made the heirs of Shackelford defendants, alleged that they had received assets to a considerable amount, and prayed that they might be required to execute to him a deed for the land, in fulfilment of their ancestor’s obligation and surrender to him the possess,ion of it.
A vendor witftout title after-wards acquiring. title it enures to the benefit of Ms vendee — but if the heir of such vendor acquire title he cannot be compelled to surrender it or te answer in damages for failing to convey unless he received assets from the ancestor.
Metcalfe answered, denying that he took possession of the land, claiming it under Lyne Shackelford, who he denies ever had any title to it. Admits that he appropriated and obtained patents for it, under Kentucky treasury warrants, believing that the land was vacant. Denies all knowledge of the complainant’s claim or right to the land; and alleges that he and those claiming under him, have been in possession .of it ever since the year 1819, claiming it as his own. He denied that his wife, or himself, had ever received any assets from Shackelfordjs estate. He states that if Lyiie Shackelford ever executed such a bond as the complainant relies upon, which is not admitted but denied, it was executed by him merely as the surety of Chamberlaine, and has been long since satisfied. He relied upon his elder title, the statute of limitations, and the staleness of the complainant’s claim.
As no right or title to the land descended from Shackelford to his heirs at law, the complainant cannot demand from them .a specific execution of the contract of their ancestor. If Shackelford had been the owner of the land, or had any title to it, either legal or equitable, at the time he executed his obligation to the complainants in conjunction with Chamberlaine, and that title had passed to his heirs at law upon his death, they would have been compelled, in a Court of Equity, to have conveyed it to the complainant. But it does not follow, that they are bound to convey him any other title they may have acquired to it, even with a knowledge of his claim. Admitting that Shackelford was *204 one of the vendors, then any title which he might have subsequently obtained, would have enured to the benefit of his vendee. But his contract only imposes on his heirs an obligation to convey any title which may have descended to them from him, or to respond in damages, so far as they may have received assets for a breach of any of its stipulations. In other respects they occupy the attitude of third parties, and as their ancestor never had any title to the land, they as heirs, are under no obligations to convey it to the complainant, or to surrender any title to it, which they have acquired since his death.
The heir of one who has conveyed land is estopped to deny that the ancestor had title at the time he conveyed.
A bond for conveyance, under the circumstances of the case presumed to be satisfied, after the lapse of 40 years.
Had Shackelford joined in the execution of the deed made by Chamberlaine to the complainant, his heirs would have been estopped to deny that he had title at the time, But that estoppel could not have imparted any equity to the complainant, or given him any right to relief in a Court of Chancery, although it would have enabled him to have maintained a suit, at law, against the heirs for the land.
There is no evidence that Metcalfe or his wife ever received any part of Shackelford’s estate after his death, The complainant did exhibit the will of Shackelford, by which it appeared, that the testator had made specific devises to his children; and had also devised to them the residue of his estate, after the payment of his debts, But there is no testimony that any part of the estate was ever received by Metcalfe or his wife, and as they have denied, any of it ever came to their hands, the probability is, it was all exhausted in the payment of debts. The covenant of warranty, therefore, creates no obligation on Metcalfe, even if it could for any purpose, be relied upon by the complainant in a Court of Equity.
Inasmuch, however, as the bond executed by Chamberlaine and Shackelford was dated in 1798, and a deed for the land was made by Chamberlaine to the complainant in 1803, and this suit was not commenced until upwards of forty years afterwards, the presumption js almost conclusive that the stipulation for a convey *205 anee of the title, was considered by the parties as fully complied with and satisfied by the deed executed by Chamberlaine. This presumption is.fortified by the fact, that Shackelford had no title to the land, it having been previously conveyed to Chamberlaine; and it is not repelled by any of the facts or circumstances proved in the cause. If the stipulation in the bond for a conveyance of the land is to be regarded,as having been complied with, and we think it should under the circumstances, the consequence is, that the complainant’s equity, so far as it is based upon a right to a specific execution of the contract, has completely failed.
Onehavlng taken possession under a particular title cannot, whilst so in possession, assert an adversary title.
If, however, the defendants took possession of the land under the complainant’s title, claiming it as the heirs of Shackelford, and afterwards, while so possessed, obtained an elder legal title, do these facts create an equity in the complainant, and authorize him to ap-ply to a Court of Chancery for a surrender ánd con-, veyance of the legal title and the possession? They do, not, in our judgment, have this effect.. If they acquired the possession of the land under the complainant’s claim, the defendants could not, whilst in possession, set up and rely upon any other claim in Opposition to it, unless they had openly assumed a hostile attitude and possession, with the knowledge of the'complainant, and had continued such adverse holding a sufficient length of time to bar his right of entry. But they would be under no equitable obligation to convey to him the title thus acquired, but might, after having restored the possession, if they were bound to do so, assert their own title to the land.
But the complainant’s remedy on this ground would be in a Court of Law. If the defendants entered under his title, and in subordination to it, they are estop-, ped to deny it, or to rely upon any other title, until they restore the possession to him. His legal remedy is full and ample, unless he has lost it by negligence and unreasonable delay in asserting his rights. If he' has permitted the defendants to continue an open and notoriously adverse, uninterrupted possession, until hjs. *206 right of entry has been barred, that does not give him a right to relief in equity. His remedy is purely legal; and the decree of the Court below dismissing his bill was correct.
L. Hard for plaintiffs'; Morehead fy Reed for defendants.
Wherefore the decree is affirmed.